## SMITH v. GILBERT et al. *
### No. 3911.

Court of Civil Appeals of Texas. Texarkana.

Nov. 18, 1930.

Rehearing Denied Nov. 20, 1930.

Starnes, James, Clower & Gibson, of Greenville, for appellant.

Butler, Price & Maynor, of Tyler, for appellees.

HODGES, J.

Appellant filed this suit to reform a deed and recover a sum of money which he alleges belonged to him and had been wrongfully collected by the appellees. This appeal is from an order sustaining exceptions to certain portions of his petition and a trial amendment.

The following is the substance of the facts stated in the petition: The plaintiff and the defendant Inez Gilbert, formerly Inez Smith, are the children of H. H. Smith, who died in April, 1921. Smith left a surviving wife and several other children who are not parties to this suit. He owned at the time of his death a tract of approximately 350 acres of land situated in Van Zandt county. In December, 1922, his widow and children agreed upon a partition of the land, and a partition deed was executed which divided the land into eight blocks. Block No. 3, containing 40½ acres, was allotted to the defendant Inez Gilbert as her portion of the estate. The partition deed, however, provided "that the oil and mineral rights in said land were not partitioned but that all of the said heirs were to share equally in all mineral rights in said land and that their interest in and to such oil and mineral rights were to remain together and to be owned jointly by all of the said children and that said partition deed should not in any way effect their rights to share in such oil and mineral rights."

It is alleged that thereafter plaintiff Pick Smith purchased block No. 3 from the defendants in this suit, together with all the mineral rights of the defendant Inez Gilbert in the 350-acre tract of land which formerly belonged to her father's estate. A deed was executed by Inez Gilbert and her husband conveying to the appellant block No. 3. It contained the following clause with reference to mineral rights: "It is agreed and understood that we hereby release any and all mineral rights to the said Pick Smith and wife, Maude Smith." All

*Writ of error granted.

the interested parties, it is alleged, construed that language as conveying the entire mineral rights of the grantee, Inez Gilbert, in the 350-acre tract of land inherited from her father.

It is further alleged that on September 14, 1929, the plaintiff, together with the other owners of the estate of H. H. Smith, executed an oil lease thereon to Cranfill and Reynolds; that the amount of money due plaintiff as his portion of that lease was $2,650. Cranfill and Reynolds paid plaintiff the sum of $1,350, leaving a balance of $1,-300 which was wrongfully paid to Inez Gilbert upon her representation that she was entitled to it as one of the joint owners of the mineral rights in the H. H. Smith estate.

Plaintiff alleged that this money belonged to him by virtue of the contract of purchase and the payment of the full consideration and the value of the 40½-acre tract of land and all of the mineral rights of the defendant Inez Gilbert in the land formerly belonging to her deceased father's estate. Plaintiff asked for a judgment for the sum of $1,300 with interest thereon. Before the case was tried the plaintiff filed the following trial amendment:

"Plaintiff alleges that before and at the time of the deed from defendants to plaintiff, mentioned in plaintiff's first amended original petition was executed, both plaintiff and defendants had agreed that said deed should convey from defendants to plaintiff all the mineral rights owned by the defendants in and to all the land described in plaintiff said petition. That plaintiff at the time stated to defendants that he would not purchase defendants' interest in said land without he could buy from defendant their entire interest in said estate including all of their mineral rights for the sum of $1,200.00. And that both defendants and plaintiff and defendant went to a Notary Public for the purpose of getting the said Notary Public to draw up a deed to said land and to said mineral rights. The plaintiff and defendant requested the Notary Public to prepare a deed for the defendants, to plaintiff conveying the said land and said mineral rights and that both plaintiff and the defendants intended at the time and believed that said deed was as follows: "It is agreed and understood that we hereby release any and all mineral rights to the said Pick Smith and wife Maude Smith," were sufficient and did convey from defendants to plaintiff all of the mineral rights in all of the land described in plaintiff's said petition. Plaintiff says that if said language standing alone is insufficient to convey said mineral rights that same is reason of a mutual mistake on the part of both plaintiff and defendants. That both plaintiff and defendants intended that the said deed should convey said mineral rights and that said clause was inserted in said deed for that purpose. That said Notary Public F. P. Lybrand represented to both plaintiff and the defendants that said language was sufficient to convey said mineral rights, and that both plaintiff and defendants relied on his statement as Notary Public and believed that said language was sufficient and did convey said mineral rights.

"Wherefore, premises considered, plaintiff prays as in his original petition and further prays that said deed be reformed and corrected so that it will carry into effect the intentions of the plaintiff and defendants at the time said deed was executed and will do what all parties thought said deed was doing."

The appellees filed a general demurrer and what they termed special exceptions to the appellant's trial amendment. They excepted to that portion of plaintiff's petition wherein it stated that the understanding between the parties interested was that the deed should convey Inez Gilbert's entire interest in the estate of H. H. Smith. The basis of the exception is that the language used was an attempt to vary the deed by proving a stipulation not expressed in the deed, contrary to the Statute of Frauds (Rev. St. 1925, art. 3995); that the mistake, if any, was one which could not be corrected in a court of equity. They also pleaded specially that they were entitled to the money paid to them by Cranfill and Reynolds and asked to have the cloud cast upon that title to the mineral rights in the land by the claim of the plaintiff removed. The court sustained the exceptions above stated and rendered judgment for the appellees granting the relief they prayed for.

The principal complaint in this appeal is that the court erred in sustaining the exceptions to the plaintiff's trial amendment on the grounds stated above. The petition of the appellant as modified by the trial amendment should, we think, be treated as a suit to reform a deed upon the ground of a mutual mistake.

The appellant admits that the deed contains the very terms they agreed upon, but it is claimed that there was a mistake as to the sufficiency of the descriptive language used to include all the mineral rights which the deed was intended to convey; that is, all the mineral rights owned by Inez Gilbert in the original tract of 350 acres.

It is well settled that the Statute of Frauds supra is no bar to the right of a party to a deed of conveyance to have that instrument corrected and reformed so as to embrace the real contract upon which the deed is based. Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Norris v. W. C. Belcher Land

Mortgage Co., 98 Tex. 176, 82 S. W. 500, 83 S. W. 799; Henenberg v. Winn et al. (Tex. Civ. App.) 1 S. W. (2d) 432.

The exceptions sustained by the trial court, while called "special exceptions," were really general demurrers to that portion of the plaintiff's petition to which they refer. If it be true, as alleged by the appellant, that the real contract upon which the deed was based was a sale and purchase of the entire mineral rights of the appellee Inez Gilbert in the H. H. Smith estate, and that it was intended to incorporate in the conveyance a description of those mineral rights, a material portion of the contract has evidently been omitted. The language of the deed as written is not sufficient to include any mineral rights of the grantor except those in the 40½-acre tract of land conveyed. If the omission of terms legally sufficient to express the contract was the result of a mistake on the part of all the parties interested in that transaction, there was, then, a mutual mistake.

But is that such a mistake as a court of equity will correct? According to the petition, all the parties agreed upon the very terms used. The mistake, if any, was as to the legal effect of those terms. They did not describe the location of the mineral rights which, it is alleged, the deed was intended to convey. If that omission be treated as a mistake of fact, unquestionably it may be corrected by a court of equity in an appropriate proceeding.

If it be treated as a mistake of law due to the ignorance of the parties and the draftsman who wrote the deed, it is not necessarily beyond the reach of a court of equity to correct. Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Hunt v. Rousmaniere, 8 Wheat. 174, 5 L. Ed. 589; Snell v. Atlantic F. & M. Insurance Co., 98 U. S. 85, 25 L. Ed. 52; Knight v. Glasscock, 51 Ark. 390, 11 S. W. 580; Dinwiddie v. Self, 145 Ill. 290, 33 N. E. 892; Pinkham v. Pinkham, 60 Neb. 600, 83 N. W. 837; Corrigan v. Tiernay, 100 Mo. 276, 13 S. W. 401; Condor v. Secrest, 149 N. C. 201, 62 S. E. 921. See, also, 28 L. R. A. (N. S.) 819–822, where will be found a number of cases on the same subject collated by the author.

The appellant alleged that he purchased and paid for the entire mineral rights of Inez Gilbert in her father's estate, as well as block No. 3, described in the deed. The demurrers admitted those averments to be true. It would therefore be inequitable to permit her to retain both the property and the purchase money for which she had sold the property. There are, therefore, ample equitable grounds, we think, for the court to make the corrections here sought.

Justice Harlan who wrote the opinion in Snell v. Atlantic F. & M. Insurance Co., above referred to, said: "It would be a serious defect in the jurisdiction of courts of equity if they did not have the power to grant relief against mutual mistakes or fraud in the execution of written instruments. Of course parol proof, in all such cases, is to be received with great caution and, where the mistake is denied, should never be made the foundation of a decree, variant from the written contract, except it be of the clearest and most satisfactory character." Again he says: "It may be said that the mistake made out was a mistake of law, and, therefore, not reformable in equity. It was said in Hunt v. Rousmaniere, 1 Pet. 1, to be the general rule, that a mistake of law is not a ground for reforming a deed founded on such mistake, and that the exceptions to the rule were not only few in number, but had something peculiar in their characters. The Chief Justice, however, was careful in that case to say that it was not the intention of the court 'To lay it down, that there may not be cases in which a court of equity will relieve against a plain mistake, arising from ignorance of law.' He said that he had found no case in the books in which it has been decided that a plain and acknowledged mistake in law was beyond the reach of equity." In 1 Story Eq. Jur. § 138, the author, after stating certain qualifications to be observed in granting relief upon the ground of mistake of law, says that: "The rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion, and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best considered and best reasoned cases upon the point, both English and American." The same author says: "We trust the principle that cases may and do occur where courts of equity feel compelled to grant relief upon the mere ground of the misapprehension of a clear rule of law which has so long maintained its standing among the fundamental rules of equity jurisprudence is yet destined to afford the basis of many wise and just decrees without infringing the general rule that a mistake of law is presumptively no sufficient ground of equitable interference."

We think it clearly appears from the plaintiff's petition that there was such a mistake as a court of equity may correct without violating the well-established rules which have heretofore prevailed in this country. We therefore conclude that the court erred in sustaining the exceptions to the plaintiff's trial amendment, and thereby deprived him of the opportunity of offering evidence in

support of his action to have the deed corrected.

The judgment will therefore be reversed, and the case remanded for a new trial.